IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TURN OF THE CENTURY SOLUTION, L.P., ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 05-816-SLR |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| INTERNATIONAL RECTIFIER CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

DECLARATION OF GLENN W. TROST SUPPORTING
INTERNATIONAL RECTIFIER'S MOTION TO TRANSFER

I, Glenn W. Trost, declare as follows:

1. I am an attorney licensed to practice law before all courts in the State of California, as well as several United States District Courts, United States Circuit Courts of Appeals and the United States Supreme Court. My application to be admitted *pro hac vice* in this District is pending. I am a partner in the law firm of White & Case LLP, of counsel for defendant International Rectifier Corporation ("IR") in this action. I have personal knowledge of the following facts, and if called as a witness I could and would competently testify thereto.

2. Although IR is incorporated in Delaware, it does not carry on any business in Delaware, it does not own or maintain any facility or property in Delaware, and it has no employees in Delaware. Its headquarters and principal business location is in El Segundo, California, which is in Los Angeles County. The United States District Court for that location is the Central District of California.

3. In February 2003, IR and one of its then-employees were sued in the California state courts by a plaintiff named Anthony Sneed. That case, entitled *Sneed v. Niel Armstrong and International Rectifier Corporation*, Los Angeles Superior Court Case No. BC 296142, involved a claim by Mr. Sneed that he was entitled to certain contractual payments based on IR's alleged use of a Y2K remediation technique that Mr. Sneed had disclosed to IR pursuant to a Non-Disclosure Agreement. The *Sneed* action went to trial in March 2004, with judgment entered in April 2004 and post-trial motions resolved in June 2004. I was the lawyer with principal responsibility for representing the defendants in the *Sneed v. Armstrong* action, including at trial.

4. One of the issues in the *Sneed v. Armstrong* action was what IR had done to remediate its central computers to handle the so-called Y2K problem. IR's documents relating to this issue were kept at its facility in El Segundo, California. IR defended the case by, *inter alia*, showing that its Y2K remediation was in the public domain – among other places, it was described as a previously known technique in the Harvey Alter patents now being asserted in this case.

5. The evidence at trial was that IR had one computer center at its headquarters in El Segundo, California, as well as several others outside of the United States, that employed IBM AS/400 mainframe computers running a software application that processed data in a format that allocated two digits for the year. As was well known at the time, computer programs employing such data formatting were subject to the Y2K problem and needed to be replaced or remediated in order to correctly process data relating to years after 1999.

6. The following four witnesses testified at the *Sneed* trial about IR's Y2K remediation:

a) <u>Niel Armstrong</u>.  Mr. Armstrong, who has since left the Company, was the IR manager in charge of the Y2K remediation efforts.  Mr. Armstrong was the decision-maker within the company and testified in the *Sneed* trial about the reasons for his decision, IR's relevant decision-making process, and the Y2K remediation technique ultimately implemented by IR.  As the decision-maker, only Mr. Armstrong can testify concerning the reasons for his decision.

b) <u>Chris Casey</u>.  Mr. Casey was the IR employee with overall responsibility for the implementation of the Y2K remediation for its IBM AS/400 computers.  He testified at trial about the details of the remediation technique and the conversion schedule.  Mr. Casey resides in the Los Angeles area.

c) <u>Joaquin Garcia</u>.  Mr. Garcia was an outside consultant working for a technical consulting firm that had been retained by IR to advise and assist it in connection with its Y2K remediation.  Although he has since been hired by the company, he was not an IR employee when he testified or at the time of the events in question.  He was served with a third-party subpoena and testified at trial that IR has implemented a previously known remediation technique.  Mr. Garcia works in El Segundo, California and resides in the Los Angeles area.

d) <u>Greg Holmes</u>.  Mr. Holmes also was an outside consultant working for a technical consulting firm that had been retained by IR to advise and assist it in connection with its Y2K remediation.  He was served with a third-party subpoena and testified at trial that IR has implemented a previously known remediation technique.  Mr. Holmes resides in the Los Angeles area.

7.  As is apparent from the foregoing discussion, two of the four witnesses who testified about IR's Y2K remediation at the *Sneed* trial are not employees of IR and can be compelled to testify only via subpoena. Because they reside in California, moreover, those witnesses cannot be compelled to testify in Delaware.

8.  Shortly after the *Sneed* trial concluded, Patrick Madamba, Jr., a lawyer for Turn of the Century Solutions, L.P. ("TOCS") wrote to Mr. Armstrong about the two patents TOCS now asserts in this action, referring to "multiple references and admissions made by [IR] during the course of the Sneed Litigation" and "the record in the Sneed Litigation" and asserting "that the steps taken by IRC to remediate its production A/S 400 computers for Year 2000 compliance may infringe the TOCS patents." A true and correct copy of Mr. Madamba's June 22, 2004 letter is attached hereto as Exhibit A. TOCS demanded a license fee of $200,000 for IR's supposed use of those patents, a sum much less than the cost of either prosecuting or defending a lawsuit for infringement of those patents.

9.  I responded to Mr. Madamba's June 22, 2004 letter by pointing out that he had been misinformed about the evidence in the *Sneed* case, and that IR's Y2K remediation actually employed a technique that the TOCS patents themselves describe as an undesirable prior-art method. A true and correct copy of my September 3, 2004 letter to Mr. Madamba is attached hereto as Exhibit B.

10. Mr. Madamba never responded to my September 3, 2004 letter. After doing nothing for more than a year, TOCS filed the instant action on November 29, 2005.

11. The computer programs that are the subject of the plaintiff's claims were remediated based on work done exclusively at IR's El Segundo, California, headquarters. All of the extant documents relating to those activities are in El Segundo, and all of the percipient witnesses of

whom I am aware live and work in the Los Angeles area. The only activities that are alleged to be infringements of the TOCS patents involve using those remediated computer programs. All such activity takes place exclusively in El Segundo, California, which is the only location in the United States of any of IR's remediated IBM A/S 400 computers. IR does not sell (and is not alleged to be selling) any allegedly infringing software.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on March 3, 2006 at Los Angeles, California.

_____
Glenn W. Trost

# EXHIBIT A

LAW OFFICES OF
# GARY A. ROSEN, P.C.
1831 CHESTNUT STREET, SUITE 802
PHILADELPHIA, PENNSYLVANIA 19103
(215) 972-0600   FAX (215) 972-6006

PATRICK MADAMBA, JR.*
SENIOR COUNSEL

EMAIL: PMADAMBA@LOGARPC.COM

*ADMITTED IN NEW JERSEY

June 22, 2004

**VIA OVERNIGHT MAIL**

Niel E. Armstrong, Vice President
International Rectifier Corporation
233 Kansas Street
El Segundo, California 90245-4316

RE:   International Rectifier Corporation Year 2000 Remediation
      Potential Infringement of Turn of the Century Solution, L.P. Patents

Dear Mr. Armstrong:

This firm represents Turn of the Century Solution, L.P. ("TOCS") with respect to the enforcement of U.S. Patent No. 5,600,836, entitled "System and Method for Processing Date-Dependent Information Which Spans One or Two Centuries" (the "'836 Patent") and U.S. Patent No. 5,835,909, entitled "System and Method for Processing Date-Dependent Information Which Spans One or Two Centuries" (the "'909 Patent"; and the '836 Patent '909 Patent are collectively referred to as the "TOCS Patents"). In light of Sneed v. Armstrong, California Superior Court, Los Angeles County, Docket No. BC 296142 (the "Sneed Litigation"), there is no doubt that you are fully familiar with at least the matter claimed in the '836 Patent if not both of them. Nevertheless, I am enclosing copies of each of the patents for your convenience.

Given the multiple references and admissions made by International Rectifier Corporation ("IRC") during the course of the Sneed Litigation with respect to the TOCS Patents, and IRC's apparent use of the matter claimed in them, it would appear from the record in the Sneed Litigation that the steps taken by IRC to remediate its production AS/400 computers for Year 2000 compliance may infringe the TOCS Patents. This situation causes TOCS serious concern given that it has received no remuneration from IRC for any use of the matter claimed in the TOCS Patents. In view of IRC's possible infringement of the TOCS patents, we would appreciate a substantive and detailed

Niel E. Armstrong, Vice President
International Rectifier Corporation
June 22, 2004
Page 2 of 3

response from IRC setting forth the claims of the TOCS Patents in the context of the steps taken by IRC to remediate its production AS/400 computers for Year 2000 compliance. A conclusory response of non-infringement by IRC will be of no help in resolving this matter amicably.

If, on the other hand, IRC would prefer to avoid engaging in the back-and-forth banter of lawyers as each sets forth its positions on infringement, all the while increasing the costs to IRC to ultimately resolve this matter in an amicable fashion, TOCS is prepared to offer a single, fully-paid, non-exclusive, perpetual license for the TOCS Patents covering all IRC locations and each of its subsidiaries and affiliated entities, and fully release any and all claims that TOCS may have against them for past and future use of the TOCS Patents, for a fee of $200,000. If IRC decides to accept TOCS' offer, we will forward to IRC an appropriate form of license and release.

In resolving this matter, TOCS would prefer to avoid needless and wasteful litigation which, for example, IRC and Mr. Anthony Sneed appear to have engaged in with respect to IRC's remediation methodology. You should note, however, that in June 1999, TOCS commenced patent infringement litigation against Millennium Solutions 400, Ltd. in the United States District Court for the District of New Jersey. (See Turn of the Century Solution, L.P. v. SICOR, Inc., Millennium Solutions 400, Ltd., ITT Fluid Technology Corp., and Siemens Energy & Automation, Inc., Civil Action No. 99-3170 (GEB)). After two years of litigation, judgment was entered against Millennium Solutions 400 finding that the TOCS Patents were valid, enforceable and infringed, and awarding TOCS damages of $9.36 million after Millennium Solutions 400 ceased to defend the case. Since then, TOCS has vigorously enforced the TOCS Patents, including through litigation when necessary. Most recently, for example, TOCS settled its dispute with The Stanley Works in April 2004, which was the subject of patent infringement litigation in the United States District Court for the Eastern District of Pennsylvania, in an action captioned Turn of the Century Solution, L.P. v. The Stanley Works, Civil Action No. 03-3205 (JPF).

As a courtesy, we will refrain from taking any further action with respect to this matter until IRC has had an opportunity to review this matter and respond. But, in view of the fact that IRC is apparently already fully familiar with the TOCS Patents, we will expect to receive IRC's response by not later than July 16, 2004. If we do not receive a satisfactory response from IRC by that date, TOCS will consider its other alternatives and proceed accordingly. Moreover, if not otherwise accepted by IRC before then, at 5:00 PM EDST, TOCS' offer to license the TOCS Patents on the terms set forth above shall be rescinded without the necessity of further action by TOCS. Thereafter, any future license fee discussions shall reflect the increased costs of TOCS enforcing its patent rights against IRC to the extent necessary.

One other point is worthy of mention. I am quite sure that competent patent counsel will advise IRC that the fact that a judgment has been entered against IRC and in

Niel E. Armstrong, Vice President
International Rectifier Corporation
June 22, 2004
Page 3 of 3

favor of Mr. Sneed with respect to Mr. Sneed's BEST 2000 product (and IRC now owes Mr. Sneed remuneration) is irrelevant to the issue of whether IRC has infringed the TOCS Patents and, as a consequence, owes TOCS remuneration.

    Thank you in advance for your anticipated cooperation.

                            Very truly yours,

                            Patrick Madamba, Jr.


cc: Dr. Alexander Lidow, Chief Executive Officer (via overnight mail)

# EXHIBIT B

## COUDERT BROTHERS LLP
ATTORNEYS AT LAW

TWENTY THIRD FLOOR
333 SOUTH HOPE STREET
LOS ANGELES, CALIFORNIA 90071

TEL:  213-229-2900
FAX:  213-229-2999
URL:  WWW.COUDERT.COM

DIRECT DIAL:  (213) 229-2928
E-MAIL:       GTROST@COUDERT.COM
FILE NO:      00715-87

**NORTH AMERICA**

NEW YORK, WASHINGTON, SAN FRANCISCO, LOS ANGELES, PALO ALTO

**ASIA/PACIFIC**

HONG KONG, SINGAPORE, BEIJING, SHANGHAI, SYDNEY, TOKYO, BANGKOK, ALMATY

**EUROPE**

PARIS, LONDON, BRUSSELS, MOSCOW, BERLIN, ANTWERP, GHENT, ST PETERSBURG, FRANKFURT, STOCKHOLM

**ASSOCIATED OFFICES**

BUDAPEST, JAKARTA, MEXICO CITY, MILAN, PRAGUE, ROME

September 3, 2004

<u>**Via Facsimile (215) 972-6006**</u>

Patrick Madamba, Jr., Esq.
Law Offices of Gary A. Rosen, P.C.
1831 Chestnut Street, Suite 802
Philadelphia, PA  19103

Re:  **Turn of the Century Solution, L.P. / International Rectifier**

Dear Mr. Madamba:

This will further respond to your letter dated June 22, 2004 to Niel Armstrong at International Rectifier ("IR").

All the claims in the '909 or '836 patents call for use of a computer program that processes date information represented using a two-digit format for the year. Each patent has three independent claims – claims 1, 8 and 11 in each – requiring the use of such an "application" in conjunction with at least one "time change means." Based on the patent specifications, it is clear that IR does not employ at least the required "application" or "time change means," but instead uses a technique the specifications describe as undesirable prior art:

> "Consequently, a less onerous solution has been suggested in which the two-digit years are not converted to four-digit years. According to this solution, the application program code is modified so that each year that is read from the application's master file or other data files is reduced by 28 years. In this way all dates up to Dec. 31, 2027 are reduced back into the twentieth century and all of the date processing can occur in a single century. Once the program data is converted back in time and processed, the program data is increased by 28 years so that the resulting output dates reflect the actual or correct date. [¶] A significant drawback associated with this solution is that it will still be necessary for a programmer to locate all of the points in the application program code where dates specified by the program data are input for processing or output after processing. At each of these points, code must be inserted to perform the date conversion. Thus each time the same date data is accessed it must be converted as program data by modified application code. [¶] Accordingly, there still exists a need for a system and method for processing date-dependent data in a simple manner that does not require extensive programming changes to existing application software." ('836 patent, 1/49 – 2/4; '909 patent, 1/52-2/7.)

Patrick Madamba, Jr., Esq.
September 3, 2004
Page 2

    As Mr. Sneed may have informed you, IR's solution employed a technique that, as your client's patents observe, has the "significant drawback" that it requires "extensive programming changes to existing application software." For example, IR's solution did not use the claimed "time change means," but instead required that the program code be modified at every point that a date was read into the application or was output from the application.

    Please let me know if I can provide any further information.

Very truly yours,

*[signature]*

Glenn W. Trost

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, Richard L. Horwitz, hereby certify that on March 3, 2006, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

Jack B. Blumenfeld
Maryellen Noreika
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899

I hereby certify that on March 3, 2006, I have Electronically Mailed the documents to the following non-registered participants:

Gary A. Rosen
Patrick Madamba, Jr.
Law Offices of Gary A. Rosen, P.C.
1831 Chestnut Street
Suite 802
Philadelphia, PA  19103
pmadamba@logarpc.com
grosen@logarpc.com

By:  /s/ Richard L. Horwitz
      Richard L. Horwitz
      Kenneth L. Dorsney
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, Delaware  19899-0951
      (302) 984-6000
      rhorwitz@potteranderson.com
      kdorsney@potteranderson.com

718549